### OLSEN WATER & TOWING CO. v. DIRECTOR GENERAL OF RAILROADS.

(District Court, S. D. New York. April 13, 1923.)

1. Collision &wkey;93—Duties of vessels on crossing courses.

Where at 7:30 a. m., in broad daylight, a ferryboat and an oil tug were on crossing courses about the center of the Hudson river, with no other vessels to confuse them, the oil tug, having the ferryboat on her starboard, was bound to keep out of the way, while the ferryboat was bound to keep her course and speed, under Inland Regulations of 1897, arts. 19 and 21 (Comp. St. §§ 7893, 7895).

2. Collision &wkey;105—Oil tug, in collision with ferryboat, held at fault.

An oil tug and a ferryboat were on crossing courses about the center of the Hudson river at 7:30 a. m., in broad daylight, the oil tug having the ferryboat on her starboard, and the port forward quarter of the ferryboat came into collision with the pilot house of the tug. *Held*, under the evidence, that the oil tug was at fault, under Inland Regulations of 1897, arts. 19 and 21 (Comp. St. §§ 7893, 7895).

&wkey;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Admiralty. Libel by the Olsen Water & Towing Company against the Director General of Railroads. Libel dismissed.

Affirmed in 297 Fed. 482.

Foley & Martin, of New York City, and James F. Martin, of Buffalo, N. Y., for libelant.

Macklin, Brown & Van Wyck, and Horace L. Cheyney, all of New York City, for respondent.

WARD, Circuit Judge. This collision occurred at 7:30 a. m., in broad daylight, about the center of the Hudson river, with no other vessels to confuse them, between the ferryboat Wilkesbarre, bound down from her slip at the foot of Liberty street, New York, to her slip at Communipaw, N. J., and the oil tug Marie Olsen, bound up to Weehawken.

[1] The vessels were on crossing courses, and the Olsen, having the Wilkesbarre on her own starboard hand, was bound to keep out of the way, while the Wilkesbarre was bound to keep her course and speed. Articles 19 and 21, Inland Regulations of 1897 (Comp. St. §§ 7893, 7895). The port forward quarter of the ferryboat came into collision with the pilot house of the tug.

[2] Liability depends upon whether I adopt the account given by the master of the ferryboat or that of the master of the tug, each being at the wheel. The master of the ferryboat says that the tug, when within 300 to 400 feet, blew what he calls a "faint" blast of two whistles and starboarded to go across his bow, and then, after going about a length, blew a signal of one blast and ported to go under his stern; the ferryboat not changing her course at all, and only reversing when the collision was imminent. The master of the tug says he blew a signal of one blast and ported, which not being answered, he blew a second signal of one blast and hard-ported, which not being answered, he rang to stop and reverse, but, seeing the ferryboat changing her course to port, he rang up the engines full speed ahead to clear.

One of them was guilty of an inexcusable error. Neither account is satisfactory throughout; that is, there are variances, which I will not stop to consider. My confidence in the master of the tug is shaken by his testimony that when not 25 years of age he was given entire charge of docking and undocking the United States transport Leviathan, with 10 or 11 tugs under his orders, whenever she arrived at or left this port, which he reaffirmed most positively on cross-examination, but which was entirely shattered by the testimony of disinterested witnesses called by the ferryboat. A man who could so testify out of vanity cannot be depended upon when his personal interest is involved, and I adopt the account of the master of the Wilkesbarre that he conformed to articles 19 and 21 of the Inland Regulations of 1897.

The libel is dismissed.